UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


**JUDITH ANN JENKINS,**

        **Plaintiff,**

v.                              **Case No.  8:09-cv-01859-T-17AEP**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

        **Defendant.**

_____/

### REPORT AND RECOMMENDATION

      Plaintiff in this case seeks judicial review of the denial of her claims for a period of

disability and disability insurance benefits.[1]  Because the Commissioner of Social Security did

not properly evaluate all treating source opinions, I recommend that the Commissioner's decision

be reversed and the matter remanded for further consideration.

### I.

      Plaintiff was fifty-six years of age at the time of her administrative hearing on January

21, 2009.  (Tr. 285-86.)  She stands 5'1" tall and weighs 154 pounds.  (Tr. 80.)  Plaintiff has a

high school education and is able to communicate in English.  (Tr. 80, 289.)  She previously

worked as a sales attendant, deli cutter/slicer, and fast food worker.  (Tr. 82, 153, 286-91, 304-

---

[1]  This matter comes before the undersigned pursuant to a Standing Order of this
Court.  (*See* Dkt. No. 3); *see also* Local Rules 3.05(c)(1)(B) and 6.01(c)(21).

05.)  On January 25, 2006, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging a disability beginning January 28, 2005.  (Tr. 12, 60.) Plaintiff's disability resulted from a slip-and-fall accident at work in which she injured her left knee.  (Tr. 14, 128.)  She was diagnosed with an acute tibial spine fracture.  (Tr. 173-74.) Plaintiff's claims were denied initially on May 26, 2006 (Tr. 45-46), and upon reconsideration on August 18, 2006 (Tr. 41-42).  Thereafter, Plaintiff timely filed a written request for hearing. (Tr. 39.)

At the administrative hearing held at Plaintiff's request on January 21, 2009, before an Administrative Law Judge ("ALJ"), Plaintiff was represented by counsel and testified on her own behalf.  (Tr. 283-308.)  Also before the ALJ were medical records outlining Plaintiff's medical history.  These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

The ALJ found that Plaintiff has severe impairments consisting of status post injury to the left knee with chronic effusion and chronic tear involving the lateral collateral ligament.  (Tr. 14, Finding 3.)  Additionally, the ALJ found that Plaintiff has a nonsevere affective disorder resulting in no restriction of activities of daily living, no difficulties in maintaining social functioning, concentration, persistence, or pace, and no episodes of decompensation.  (Tr. 15.) The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 15, Finding 4.)  In so doing, the ALJ noted that the record reflects that Plaintiff's "limitations primarily relate to the lower left extremity."  (Tr. 15.)  According to the

ALJ, the reports contained in the record "denote improvement in [Plaintiff's status] such that she was healing progressively radiographically and eventually was able to ambulate without the need for an assistive device." (Tr. 15.)

In support, the ALJ relied upon the opinion of Dr. Phuc Vo, stating that "[a]s of March 17, 2005, Dr. Phuc Vo, M.D., noted the fracture to her knee from January 2005 was healing and the knee was doing well." (Tr. 15.)  The ALJ also noted that, at that time, Plaintiff insisted on obtaining an MRI, but Dr. Vo reiterated he did not believe an MRI was indicated and advised her to seek a second opinion.  (Tr. 15.)  Plaintiff sought a second opinion from Dr. Marc A. Volpe, M.D., on May 27, 2005, who initially concluded Plaintiff appeared to have a healed ACL avulsion and possible lateral meniscus tear to the left knee. (Tr. 15, 183.)  Dr. Volpe also concluded Plaintiff was limited to sedentary work restrictions.  (Tr. 15, 183.) The ALJ noted that further evaluation consisting of an MRI on June 16, 2005, showed some post-traumatic or degenerative changes in the posterior cruciate ligament, degenerative osteoarthrosis of the femorotibial joints with thinning of the hyaline articular cartilage and suspected chondromalacia patella, complex tear of the medical meniscus with a degenerative-type tear of the lateral meniscus, and a sprain of the fibular collateral ligament.  (Tr 15.)

Plaintiff underwent arthroscopic surgery on July 14, 2005.  (Tr. 15, 201.)  The ALJ relied upon Plaintiff's post operative reports, which stated that Plaintiff was regaining her motion, and doing well.  (Tr. 15, 179.)  On November 16, 2005, Dr. Volpe assessed Plaintiff as having plateaued in regards to her recovery after the left knee arthroscopy.  (Tr. 176.)  The ALJ noted Dr. Volpe's conclusion that Plaintiff had reached maximum medical improvement and

could return to work full duty.  (Tr. 15, 176.)  The ALJ further noted that Plaintiff "sought yet another opinion and treatment from another doctor, Dr. Thomas F. Winters, Jr., M.D."  Dr. Winters concluded on February 1, 2006, that he would allow Plaintiff back to work "as per her attending physician."  (Tr. 15, 203.)

The ALJ also noted that in a consultative report dated April 24, 2006, Dr. Edwin Lamm, M.D., concluded that "there was no underlying reason why she could not return to work."  (Tr. 15, 209.)  Finally, the ALJ considered that "[t]reatment reports from Dr. Shahina Javeed, M.D., also denote ongoing symptoms" but that "in correspondence dated September 27, 2007, Dr. Javeed noted the ability to perform a more sedentary position."  (Tr. 16, 242.)

Based upon the record, the ALJ found that Plaintiff has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. 404.1567(b).  (Tr. 16, Finding 5.)  The ALJ further concluded that Plaintiff's limitations would not preclude her from performing her past relevant work as a sales attendant, deli cutter/slicer and fast food worker.  (Tr. 17, Finding 6.)  Therefore, the ALJ found Plaintiff not disabled.  (Tr. 17, Finding 7.)

The Appeals Council denied Plaintiff's request for review (Tr. 4-6) and Plaintiff subsequently filed the instant action (Dkt. No. 1).

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §

4

423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id*. § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See id*. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 1035 (2005).  The Commissioner must apply the correct law and demonstrate that he has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).[2]  Similarly, it is the responsibility of the Commissioner to draw

---

[2]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered

inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

Plaintiff challenges the ALJ's decision on four grounds:

(1) the ALJ failed to properly evaluate all treating source opinions;

(2) the ALJ's determination of Plaintiff's Residual Functional Capacity ("RFC") was not supported by substantial evidence;

(3) the ALJ failed to apply the Grids; and

(4) the ALJ failed to properly evaluate Plaintiff's credibility consistent with the Eleventh Circuit pain standard.

---

prior to October 1, 1981.

For the reasons discussed below, the Court finds that the ALJ failed to properly evaluate all treating source opinions, and therefore recommends that his decision be reversed and and the case remanded for further proceedings.

### 1. The ALJ's Evaluation of All Treating Source Opinions

Plaintiff first argues that the ALJ erred in failing to analyze all of the treating source opinions and state the weight given to each opinion. (Dkt. No. 11 at 1-3.) Specifically, Plaintiff claims that the ALJ failed to indicate the weight given to Dr. Shahina Javeed's opinion, allegedly stating that "that the claimant can only do sedentary work based on new MRI evidence." (*Id.* at 1.) The Court agrees that the ALJ erred by not specifying the weight given to Dr. Javeed's opinion, as a treating physician, and, to the extent the ALJ gave it lesser weight, by not specifying the requisite good cause for doing so.

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor*, 786 F.2d at 1053. Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered

7

by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. *MacGregor*, at 1053.

Nonetheless, "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5-p; 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Additionally, "[a]djudicators must not assume that a medical source using terms such as 'sedentary' and 'light' is aware of [the Social Security Administration's] use of these terms. The judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability." SSR 96-5p.

In the instant case, it is uncontested that Dr. Javeed is a treating physician. The record indicates that Dr. Javeed had been Plaintiff's family physician since at least 2003 (*see, e.g.*, Tr. 254), through at least 2007. Thus, Dr. Javeed's opinion should have been given considerable weight unless it was inconsistent with other substantial evidence or not well supported by medically acceptable clinical and laboratory techniques. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Dr. Javeed noted on September 27, 2007, that Plaintiff "has progressively increasing left knee symptoms more with her current job" and that her "MRI from July 2007 shows

extensive ligament and cartilage pathology." (Tr. 242.) Based on these observations, Dr. Javeed advised Plaintiff to "change to a more sedentary position." (Tr. 242.) In concluding that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ considered treatment reports from Dr. Javeed, denoting ongoing symptoms, and acknowledged that "Dr. Javeed noted the ability to perform a more sedentary position." (Tr. 16.) Nonetheless, Plaintiff alleges that the ALJ committed error because "there is no mention whatsoever of the weight to be given to treating physician, Dr. Javeev." (Dkt. No. 11 at 1.) Indeed, in his analysis of Plaintiff's residual functional capacity, the ALJ states that he gave "greatest weight . . . to Dr. Vo and Volpes's longitudinal treatment reports which consistently evidence improvement and the ability to return to past work." (Tr. 17.) The ALJ also stated that he "considered the opinions of the State agency medical consultants" and gave them weight "to the extent they are consistent with the body of evidence as a whole." (Tr. 17.) Finally, while the ALJ did not mention Dr. Javeed's opinion in this part of his analysis, he noted that "[t]here are also no medical assessments from a[ ] treating or examining source indicating total and permanent disability." (Tr. 17.) However, as Plaintiff correctly indicates, the ALJ failed to specifically address Dr. Javeed's opinion that Plaintiff "has progressively increasing left knee symptoms more with her current job" and that Plaintiff's "MRI from July 2007 shows extensive ligament and cartilage pathology." (Tr. 242.)

While Dr. Vo noted improvement (*see* Tr. 190), his last examination of Plaintiff was in April of 2005 (Tr. 132), two years prior to Dr. Javeed's examination. Similarly, Dr. Volpe

opined that Plaintiff was able to return to work in November 2005.  (Tr. 176.)  Dr. Winters, on

whose medical opinion the ALJ also relies (Tr. 16), opined that he "would allow [Plaintiff] back

to work as per her attending physician" in February of 2006.  (Tr. 203.)  And Dr. Lamm, in a

consultative report, found that "there is no underlying reason why she could not return to work"

in April of 2006.  (Tr. 209.)

   Although these opinions may appear inconsistent with Dr. Javeed's conclusion, they

were reached at least more than a year prior to Dr. Javeed's opinion.  Thus, they are not

necessarily inconsistent, as the Commissioner argues (Dkt. No. 12 at 8-10), especially in light

of the fact that Plaintiff returned to work in 2006 (Tr. 290), which, according to Dr. Javeed,

worsened Plaintiff's condition.   Despite not giving Dr. Javeed's opinion substantial or

considerable weight, the ALJ failed to articulate any reasons for his failure to do so. *See Lewis*,

125 F.3d at 440 ("The ALJ must clearly articulate the reasons for giving less weight to the

opinion of a treating physician, and the failure to do so is reversible error.") (*citing MacGregor*,

768 F.2d at 1053);[3] *see also Kinnaird v. Barnhart*, 138 F. App'x 224, 228 (11th Cir. 2005)

---

[3]  The Commissioner argues that the holding in *MacGregor* that the Commissioner's
failure to properly refute a treating physician's testimony results in the testimony being
accepted as true, does not represent binding Eleventh Circuit law.  (Dkt. No. 12 at 7.)
The Court does not find the Commissioner's reasoning persuasive.  Contrary to the
Commissioner's contention, *MacGregor* constitutes binding precedent in this Circuit.
*See Pollock v. Astrue*, No. 8:07-cv-1114-T-27TBM, 2010 WL 813522, at *1 (M.D. Fla.
Mar. 3, 2010).  Additionally, this case is not appropriate for a reversal and direct award of
benefits based on Dr. Javeed's opinion.  *See id.*  ("The court may reverse the decision of
the Commissioner and direct an award of benefits where the Commissioner has already
considered the essential evidence and it is clear that the cumulative effect of the evidence
establishes eligibility without any doubt.") (citation omitted).  Rather, the Court finds it
appropriate to recommend reversal and remanding the case for the ALJ to properly
consider all medical evidence of record.  Indeed, Dr. Javeed's conclusion that Plaintiff
should "change to a more sedentary position" (Tr. 242), is not determinative, since that

(remand was appropriate where the ALJ gave improper weight to the plaintiff's most recent treating physician who indicated that the plaintiff's condition worsened).  Accordingly, this Court recommends that this case be remanded for the ALJ to consider Dr. Javeed's opinion and state the weight given to it.  If the ALJ fails to accord Dr. Javeed's opinion considerable or substantial weight, the ALJ should specify the requisite good cause for doing so.

### 2. The ALJ's Determination of Plaintiff's RFC

Plaintiff's second argument is that the ALJ erred in finding that Plaintiff was capable of performing her past relevant work.  (Dkt. No. 11 at 5.)  Plaintiff argues that performing her past relevant work requires working "eight hours a day, five days a week," which she would not be able to do.  (*Id*. at 3-5.)

RFC is defined as the most Plaintiff "can still do despite [her] limitations."  20 C.F.R. § 404.1545(a).  RFC is an assessment "based on all of the relevant medical and other evidence."  *Id*. Additionally, Social Security Ruling ("SSR") 96-8p, which addresses RFC assessments at steps four and five of the sequential analysis, dictates that the ALJ must consider and address medical source opinions and directs that, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p.[4]

Here, in support of his RFC Analysis, the ALJ noted that "the record reflects significant improvement in [Plaintiff's] status such that she is able to now ambulate without the need for

_____

issue is reserved for the Commissioner.

[4]  In this circuit, such rulings are not binding on the court, but are entitled to deference. *See Fair v. Shalala*, 37 F.3d 1466, 1469 (11th Cir. 1994).

an assistive device and has been released back to work." (Tr. 17.)  Additionally, the ALJ noted

that Plaintiff "testified she was looking for full-time work, but was only able to find work at

Target 'because of the economy.'" (Tr. 17.)   According to the ALJ, "it is apparent from

[Plaintiff's] testimony she would be working full-time if she could find full-time employment."

(Tr. 17.)

   Contrary to the ALJ's statements, when asked whether she could physically work more

than two or three days per week, Plaintiff stated: "[f]rankly I don't think I can because I have

come home – last Wednesday night I came home and the back of my knee was swollen.  And my

knee was very, very sore."  (Tr. 291.)  She also testified that she experiences knee swelling

depending on how much she is "on it" and working.  (Tr. 294.)  Plaintiff testified that she

initially worked three or four days a week, but because of the economy, she now works two days

a week. (Tr. 290, 299.)  It is not apparent from Plaintiff's testimony that she would be working

on a full time basis if she could find full-time employment, as the ALJ indicates.

   Additionally,  while  the  ALJ  relied  on  medical  evidence  from  2005  and  2006  in

concluding that "the record reflects significant improvement," he did not consider Dr. Javeed's

opinion from 2007 that Plaintiff "has progressively increasing left knee symptoms more with her

current job" (Tr. 242).  Because Dr. Javeed's opinion contradicts the ALJ's assessment of

Plaintiff's RFC, the ALJ was at least obliged to explain why he ignored Dr. Javeed's opinion.

*See Markell v. Astrue*, No. 8:06-cv-1720-T-TBM, 2007 WL 4482245, at *4 (M.D. Fla. Dec. 19,

2007) (finding that a remand was appropriate where "there [was] no express statement by the

ALJ as to why the doctor's opinion was not adopted."  The Court noted that "[w]hile it is

reasonable to infer from the decision that the ALJ discredited [the doctor's] report, in this instance, his reasons for doing so are not so easily inferred."). Accordingly, the Court recommends that the ALJ's decision be reversed and the case remanded for further evaluation of Dr. Javeed's report and the evidence of record.

### 3. The ALJ's Failure to Apply the Grid Rules

Plaintiff's next contention is that remand and reversal are warranted based on the ALJ's failure to apply the Grid rules. (Dkt. No. 11 at 5-8.) Plaintiff argues that "[i]f proper weight is given to the opinion of Dr. Javeev, and Ms. Jenkins can only perform sedentary work, under the Grids, an entirely different result would occur." (*Id*. at 5.) Alternatively, Plaintiff contends that "even if one were to assume that Ms. Jenkins' proper RFC was of light work, when she turned 55 on March 28, 2007, Rule 202.06 would again direct a finding of disability." (*Id*. at 7.) The Commissioner argues that the Grids do not apply in this case because the ALJ determined at step 4 that Plaintiff could perform her past work. (Dkt. No. 12 at 14.) The Commissioner states that "[t]he grids are only used at step 5 to determine whether a claimant can perform other work in the national economy after an ALJ has determined that the claimant cannot perform her past relevant work." (*Id*.) According to the Commissioner, because the ALJ "properly determined at step 4 that Plaintiff could perform her past relevant work as a sales attendant, deli cutter/slicer, and fast food worker[,] . . . the ALJ properly did not proceed to step 5 of the sequential analysis" and therefore, "the grids do not apply." (*Id*. at 14-15.)

The Commissioner is correct in stating that the Grids are employed at step five, where a plaintiff cannot perform his past relevant work. *See* 20 C.F.R. § 404.1569 (stating that Grids

apply in "cases where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work."). In this case, the ALJ's failure to consider all medical evidence of record, specifically Dr. Javeed's opinion, necessarily affected the ALJ's evaluation of Plaintiff's RFC and her ability to perform her past work. Thus, the Court recommends that the case be remanded for a proper RFC determination which will in turn determine whether or not the Grids apply.

### 4. The ALJ's Use of the Eleventh Circuit Pain Standard

Plaintiff's fourth and final contention is that the ALJ erred in failing to properly utilize the Eleventh Circuit pain standard in evaluating Plaintiff's credibility. (Dkt. No. 11 at 8-9.)

The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints. As the Court of Appeals explained in *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "require[s] evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." This standard also applies to complaints of subjective conditions other than pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discounts Plaintiff's testimony concerning subjective complaints, he must "articulate explicit and adequate reasons" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir.1995)).

14

In this instance, because the ALJ did not properly consider Dr. Javeed's medical opinion, the Court will not address Plaintiff's argument regarding the ALJ's credibility finding as it is dependent on a correct evaluation of Plaintiff's underlying medical condition.  For the reasons previously discussed, the Court recommends that the ALJ's decision be reversed and the case be remanded for further consideration of the medical evidence of record consistent with this Report and Recommendation.

### IV.

For the foregoing reasons, it is **RECOMMENDED** that:

(1) the decision of the Commissioner b**e REVERSED** and the case **REMANDED** for further administrative proceedings consistent with this Report and Recommendation; and

(2) the Clerk of Court be directed to enter final judgment in favor of Plaintiff.

**IT IS SO REPORTED** at Tampa, Florida on this 9th day of August, 2010.


_____

ANTHONY E. PORCELLI
United States Magistrate Judge

15

## <u>NOTICE TO PARTIES</u>

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.  28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*


Copies furnished to:
Hon. Elizabeth A. Kovachevich
Counsel of Record

16